UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS SCOTT KING, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DEMICHAEL DEWS, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-07722-VC<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTION TO SEAL**<br><br>Re: Dkt. Nos. 73, 76, 86 |

　　　　The defendants' motions for summary judgment are granted.

　　　　1.　Based on the uncontroverted evidence in the summary judgment record, no Eighth Amendment violation occurred. The evidence uniformly shows that an altercation between King and the officers that began in King's hospital room spilled into the hospital hallway. *See, e.g.*, Schwaiger Decl., Ex. EE (hospital security video); Dkt. No. 85-1, at 252–54 (McFarland deposition); Dkt. No. 85-1, at 297–98 (Munsell deposition). After following King into the hallway, Sergeant Dews tackled him to the ground. Dkt. No. 85-1, at 195–99 (Dews deposition). While Dews used his bodyweight to try to restrain King, Officers Nee and Tran secured King in four-point restraints, an endeavor that took "a couple of minutes total." *Id.* at 70–72 (Tran deposition); *id.* at 467 (Nee deposition); *see also* Dkt. No. 73-1, at 7 (Dews declaration) (handcuffs were secured "mid struggle or late struggle" to the best of Dews' memory). Throughout this time, and even after he was restrained, King continued to struggle, and Dews and Tran, with some help from nearby hospital staff, continued to use their bodyweight to restrain him. *See, e.g.*, Dkt. No. 73-1, at 7 (Dews declaration); Dkt. No. 74, at 99 (Tays deposition); Dkt. No. 85-1, at 538 (Dittmar deposition); Dkt. No. 85-1, at 260–61 (McFarland

deposition).

A doctor on the hospital's rapid response team was called to the scene and prescribed an antipsychotic medication to calm King down. Dkt. No. 85-1, at 538 (Dittmar deposition); Dkt. No. 74, at 214–15 (McFarland deposition). After the injection was administered, King stopped struggling, and everyone involved in the physical restraint released their hold on him. Dkt. No. 73-1, at 8 (Dews declaration); Dkt. No. 74, at 240 (Bondurant deposition). Only after this occurred did a nurse raise a concern that King was not breathing. Henkels Decl., Exs. B & D (body-cam footage). Until that time, no one in the crowd of medical personnel observing the events had expressed concerns about King's medical condition. According to video footage, the incident in the hallway lasted a little more than nine minutes. *See* Henkels Decl., Ex. G (hospital security video).[1]

"Where a prison security measure is undertaken to resolve a disturbance[] . . . that indisputably poses significant risks to the safety of inmates and prison staff," the force a prison official uses does not violate the Eighth Amendment when it is "applied in a good faith effort to maintain or restore discipline" rather than "'maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotations omitted); *see also Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000). King's escape from his room to the hospital hallway was indisputably a disturbance that posed a significant risk to the medical personnel, patients, and guests on the hospital floor, the officers, and King himself. The situation remained volatile even after he was secured in four-point restraints. He continued to struggle, so much so that hospital employees helped the officers hold him down and a hospital doctor eventually prescribed an antipsychotic medication to calm him. Once the sedative was administered and King stopped struggling, the officers took their weight off him. Prior to that time, there is no indication they did anything beyond what was necessary to restore order and

---

[1] Nurse McFarland testified that people were still restraining King when she raised concerns that he was not breathing. *See* Dkt. No. 85-1, at 263 (McFarland deposition). This is directly contradicted by the video evidence and therefore creates no genuine dispute.

ensure the safety of staff and patients. No reasonable juror could infer, from the evidence presented at summary judgment, the kind of malicious intent necessary to find an Eighth Amendment violation in an emergency situation like this.[2]

The closest King comes to creating a genuine dispute of material fact is with the deposition testimony of Standridge, a hospital security guard. Standridge testified that King was "pretty much . . . under control" by the time he arrived. Dkt. 85-1, at 510. When he joined the officers in restraining King, he testified that King's arm was making "slow movements," not "sudden jerks." *Id.* at 506–07. Standridge never saw King try to hit or kick anyone in the hallway, lift himself off the ground, or "aggressively try[] to get free from the hold of the officers." *Id.* at 507–08. Consistent with this testimony, King contends that there is a difference between struggling to resist and struggling to breathe and that he was doing the latter.

But even Standridge's testimony does not create a genuine dispute of material fact. For one, Standridge's testimony is vague as to time; it is unclear at what point Standridge joined the fray and how long he assisted in the restraint of King. But more importantly (and alone sufficient), even Standridge admits the material point summary judgment turns on: King continued to struggle after he was secured in four-point restraints. In the midst of a chaotic situation, the officers had to make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. Given the nature of the threat to the public, the officers were permitted to continue applying force for as long as King continued to struggle. *Id.*[3]

---

[2] King contends that the deliberate indifference standard should govern his claim because there was no longer an emergency after he was secured in four-point restraints. *See Johnson*, 217 F.3d at 733–34 (explaining how the Eighth Amendment inquiry differs in a situation where exigent circumstances do not exist). But the record makes clear that the exigency persisted for as long as King continued to struggle in the middle of the hospital hallway surrounded by members of the public. Even applying the deliberate indifference standard, however, there was no Eighth Amendment violation as a matter of law (and the defendants would be entitled to qualified immunity if there was).

[3] For the same reasons, King has not created a genuine dispute of material fact that the officers' conduct shocked the conscience, thereby violating the Fourteenth Amendment (or the First Amendment, as King alternatively alleges).

2. Even if the evidence supported King's characterization of the facts—that after he was placed in four-point restraints, his continued movement reflected a struggle to breathe rather than ongoing resistance—the officers would be entitled to qualified immunity.

The contours of the Eighth Amendment right in these circumstances are not clearly established. King has not pointed to a case finding an Eighth Amendment violation on facts resembling these. The cases he relies upon discuss violations of the Fourth Amendment. *See Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2240–41 (2021); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1053–54 (9th Cir. 2003); *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1094 (N.D. Cal. 2017). But the Eighth Amendment standard governing the conduct of a prison official responding to a safety threat is very different. *Whitley*, 475 U.S. at 319.[4]

King need not identify a comparable case if the constitutional violation was so obvious that any reasonable officer would have known they were committing it. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). But here, it was not obvious that the officers needed to stop their bodyweight restraint of King earlier than they did. Until the injection was administered, King continued to struggle. At that time, he was still located in the hallway of a public hospital, surrounded by medical personnel and, presumably, members of the public. And a reasonable officer in that situation could have interpreted his struggling as continued resistance, especially given that none of the observing doctors or nurses raised concerns about King's medical condition until the officers released their bodyweight restraint. In such circumstances, the officers are entitled to qualified immunity.[5]

*  *  *

Dews' objection to the jail call between King and his sister on relevance grounds is

---

[4] While *Greer* also discusses a Fourteenth Amendment claim, it does so primarily under the deliberate indifference standard. *See* 229 F. Supp. 3d at 1108. The discussion of the purpose-to-harm standard is cursory and not alone sufficient to put any reasonable officer on notice that the conduct here was unlawful.

[5] For the same reasons, King has not shown that the officers are not entitled to qualified immunity on his First and Fourteenth Amendment claims.

denied. King's motion to seal is also denied without prejudice. It is not enough to state that the documents sought to be sealed are subject to the stipulated protective order. The motion must explain why there is a compelling reason that the information should be rendered inaccessible to the public. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Within 7 days, King must file either a renewed motion explaining why that standard is satisfied here or the unredacted documents on the docket.

**IT IS SO ORDERED.**

Dated: May 12, 2022

                                                      VINCE CHHABRIA
                                                      United States District Judge